UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

WALTER VEGA,

      Petitioner,

v.                                Case No:  2:11-cv-413-FtM-38CM

SECRETARY, DOC and P. J.
MECUSKER,

      Respondents.

_____/

**OPINION AND ORDER[1]**

Petitioner Walter Vega ("Petitioner") initiated this action for habeas corpus relief by filing a petition pursuant to 28 U.S.C. § 2254 (Doc. #1).  Upon consideration of the petition, the Court ordered Respondents to show cause why the relief sought by Petitioner should not be granted (Doc. #22).  Thereafter, Respondents filed a response in compliance with this Court's instructions and with Rule 5 of the *Rules Governing Section 2254 Cases in the United States District Courts* (Doc. #42).  Petitioner filed an "Amended Brief" and a reply (Doc. #21; Doc. #87).

Petitioner raises ten claims in his petition.  Petitioner alleges that: (1) the trial court erred by allowing the victim to testify that, since the night of the incident, she was scared

---

[1] Disclaimer:  Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites.  These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other Web sites, this court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the court has no agreements with any of these third parties or their Web sites.  The court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.

and would not let anyone touch her; (2) the trial court erred by not granting Petitioner's motion for judgment of acquittal; (3) the trial court erred by failing to strike the testimony of the victim's former boyfriend based on a violation of the rule of sequestration; (4) the trial court erred by admitting the hearsay testimony of Officer Steven Gruber; (5) the trial court erred by allowing Officer Gederain to give his interpretation of Petitioner's statement; (6) trial counsel was ineffective for failing to adequately prepare for trial; (7) trial counsel was ineffective for failing to object to the court's lack of jurisdiction; (8) trial counsel was ineffective for failing to impeach the prosecution witnesses or to call into question the chain of custody of DNA evidence; (9) trial counsel was ineffective for failing to object to the use of "cumulative hearsay" evidence; and (10) trial counsel was ineffective for failing to object to the prosecutor's shifting of the burden of proof (Doc. #1 at 1-14).   Petitioner also filed a non-permissive "Amended Brief" in which he alleges that his due process rights were violated because he was denied an interpreter at trial; he was not timely brought to trial under Florida's speedy trial law; the prosecutor did not execute a proper oath of office; the state's DNA expert testified that there was not a 100% match of the victim's DNA to the DNA on Petitioner's hand; and a review of the testimony of the victim and her boyfriend show that they lied at trial (Doc. #21 at 2-5).

Because this Court can adequately assess Petitioner's claims without further factual development, an evidentiary hearing will not be conducted. *Turner v. Crosby*, 339 F.3d 1247, 1275 (11th Cir. 2003).   Upon due consideration of the petition, the response, the reply, and the state court record, this Court concludes that Claims One through Five of the petition are due to be dismissed as unexhausted and procedurally barred.   Claims Six through Ten are denied pursuant to 28 U.S.C. § 2254(d).   The Court also dismisses the claims raised in Petitioner's "Amended Brief" as unexhausted and procedurally barred

or as lacking in merit.

## I.   **Background and Procedural History**

On November 2, 2005, Petitioner was charged by information with sexual battery in violation of Florida Statute § 794.011(5) (Vol. 1 at 9).[2]   A jury trial was held on June 13 and 14, 2006, after which Petitioner was found guilty as charged and sentenced to thirteen years and 183 days in prison (Vol. II).   Florida's Second District Court of Appeal *per curiam* affirmed Petitioner's conviction and sentence (Ex. 5); *Vega v. State*, 980 So. 2d 502 (Fla. 2d DCA 2008).

On May 20, 2008, Petitioner filed a motion pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure ("Rule 3.850 motion") (Ex. 12).   Petitioner filed supplements to the Rule 3.850 motion on July 10, 2008, July 31, 2008, December 22, 2008, March 13, 2008, April 16, 2009, and July 1, 2009 (Ex. 16 at 30, 438, 456, 461, 501, and 511).   The post-conviction court denied all but one of Petitioner's five claims of ineffective assistance of counsel and ordered an evidentiary hearing on the remaining claim (Ex. 14).   The post-conviction court also concluded that the claims raised in Petitioner's supplemental pleadings were either procedurally barred because they should have been raised on direct appeal, or were unsupported by the record. *Id.*   After an evidentiary hearing, the post-conviction court denied relief on Petitioner's remaining Rule 3.850 claim of ineffective assistance of counsel (Ex. 15).   Florida's Second District Court of Appeal *per curiam* affirmed (Ex. 19); *Vega v. State*, 64 So.3d 1273 (Fla. 2d DCA 2011).

On, or about February 22, 2010, Petitioner filed an amended state petition for writ

---

[2] Unless otherwise noted, references to volumes (Vol. __ at ___) and exhibits (Ex. ___ at ___) are to those filed by Respondents on August 9, 2012 (Doc. #42).   Citations to the trial transcript, contained in Volume 2, are cited as (T. at ___).

of habeas corpus in which he reiterated the claims of trial court error and ineffective assistance of trial counsel he had raised on direct appeal, in his Rule 3.850 motion, and in the supplements to the Rule 3.850 motion (Ex. 22).   The petition was denied on March 8, 2010 without elaboration (Ex. 4); *Vega v. State*, 30 So.3d 505 (Fla. 2d DCA 2010).

Petitioner filed the instant petition on July 25, 2011 (Doc. #1).

## II.   Governing Legal Principles

### a.   The Antiterrorism Effective Death Penalty Act ("AEDPA")

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).   A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants deference. *Ferguson v. Culliver*, 527 F.3d 1144, 1146 (11th Cir. 2008).

"Clearly established federal law" consists of the governing legal principles, rather than the dicta, set forth in the decisions of the United States Supreme Court at the time the state court issues its decision. *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).   A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts.   *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identified the governing legal principle, but applied it to the facts of the petitioner's case in an objectively unreasonable manner, *Brown v. Payton*, 544 U.S. 133, 134 (2005); *Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000) or, "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Bottoson*, 234 F.3d at 531 (quoting *Williams*, 529 U.S. at 406).   The unreasonable application inquiry requires the state court decision to be more than incorrect or erroneous, rather, it must be "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75-77 (2003) (citation omitted); *Mitchell*, 540 U.S. at 17-18; *Ward,* 592 F.3d at 1155.

Finally, the Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller–El v. Cockrell*, 537 U.S. 322, 340 (2003) (dictum).   When reviewing a claim under § 2254(d), a federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Miller–El*, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence").

### b. *Ineffective Assistance of Counsel*

In *Strickland v. Washington*, the Supreme Court established a two-part test for

determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. 466 U.S. 668, 687-88 (1984). A petitioner must establish that counsel's performance was deficient and fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense. *Id.* Because both parts of the *Strickland* test must be satisfied in order to demonstrate a violation of the Sixth Amendment, a district court need not address the performance prong if the petitioner cannot meet the prejudice prong, or vice versa. *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000).

The focus of inquiry under *Strickland*'s performance prong is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688-89. In reviewing counsel's performance, a court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Indeed, the petitioner bears the burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable[.]" *Jones v. Campbell*, 436 F.3d 1285, 1293 (11th Cir. 2006). A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," applying a "highly deferential" level of judicial scrutiny. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690). "To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable. But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)).

As to the prejudice prong of the *Strickland* standard, Petitioner's burden to demonstrate prejudice is high. *Wellington v. Moore*, 314 F.3d 1256, 1260 (11th Cir. 2002).

Prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687.   That is, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.   To show prejudice from ineffective assistance of counsel where a plea offer was rejected because of counsel's deficient performance, the petitioner must demonstrate a reasonable probability that they would have accepted the plea had they been afforded effective assistance of counsel.   *Missouri v. Frye*, 132 S. Ct. 1399, 1410 (2012).

Finally, the Supreme Court has clarified that, pursuant to the AEDPA, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable.   This is different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Harrington v. Richter*, 131 S. Ct. 770, 785 (2011).   "A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself."   *Id.*

### c.   Exhaustion and Procedural Default

A petitioner defaults an issue unless the he first exhausts available state court remedies so that the state has the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights[.]" *Duncan v. Henry*, 513 U.S. 364, 365 (1995); 28 U.S.C. § 2254(b)(1)(A) (applicant must exhaust available state court remedies); 28 U.S.C. § 2254(b)(3) (state may rely on exhaustion requirement unless it expressly waives the right); *compare* 28 U.S.C. § 2254(b)(2) (application may be denied on the merits even when applicant fails to exhaust state remedies).

To satisfy the exhaustion requirement, a petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim. *Duncan*, 513 U.S. at 365–66; *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) (same). This affords the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845.

A claim is procedurally defaulted and barred from federal review in two instances: (1) if it was raised in state court and rejected on the independent and adequate state ground of procedural bar or default; or (2) if it was not properly raised in state court and can no longer be litigated under state procedural rules. *Coleman v. Thompson*, 501 U.S. 722, 734–35 and n. 1 (1991); *Bailey v. Nagle*, 172 F.3d 1299, 1302–03 (11th Cir.1999); *see also Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001) (state court's rejection of petitioner's constitutional claim on state procedural grounds generally precludes subsequent federal habeas review of that claim).   Unless the federal court determines that the state court "clearly and expressly" relied on independent and adequate state grounds, the federal court may address the petition. [3] *Coleman*, 501 U.S. at 735. However, when any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine, the default is *per se* adequate state grounds

---

[3] The "adequate and independent state grounds" rule applies equally to procedural and substantive state-law grounds. *Lee v. Kemna*, 534 U.S. 362, 375 (2002).   The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question. *Lee*, 534 U.S. at 375.   To foreclose federal review, the state procedural bar must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion. *Ford v. Georgia*, 498 U.S. 411, 423–24 (1991).   A state procedural bar is firmly established and regularly followed when the state has put litigants on notice of the rule, and the state has a legitimate interest in the rule's enforcement. *Siebert v. Allen*, 455 F.3d 1269, 1271 (11th Cir. 2006).

independent of the federal question. *Id.* at 735 n. 1; *Harris v. Reed*, 489 U.S. 255, 263 n.9 (1989) (federal habeas court need not require a federal claim be presented to a state court if the state court would hold the claim procedurally barred).

To overcome a procedural default so that the federal habeas court may reach the merits of a claim, petitioner must show either "cause for the default and actual prejudice resulting therefrom," or a fundamental miscarriage of justice. *Kelley v. Sec'y for the Dep't of Corr.*, 377 F.3d 1317, 1345 (11th Cir. 2004); *High v. Head*, 209 F.3d 1257, 1261 (11th Cir. 2000). Cause exists when an external impediment, such as governmental interference or the reasonable unavailability of the factual basis for the claim prevented petitioner from raising the claim. *McCleskey v. Zant*, 499 U.S. 467, 497 (1991) (superseded by AEDPA statute, but still followed by the Eleventh Circuit in *High*, 209 F.3d at 1262–63).

To meet the miscarriage of justice exception, petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent" because "it is more likely than not that no reasonable juror would have convicted him[.]" *Schlup v. Delo*, 513 U.S. 298, 327 (1995) (superseded by AEDPA statute, but still followed by the Eleventh Circuit in *High*, 209 F.3d at 1270). To be credible, such a claim requires a petitioner to support his allegations of constitutional error with new, reliable evidence not presented at trial. *Schlup*, 513 U.S. at 327.

## III.   Analysis

### a.  Claims One through Five

In Claims One, Two, Three, Four, and Five, Petitioner asserts that the trial court erred when it: (1) allowed the victim to testify that since the night of the incident, she was scared and would not let anyone touch her; (2) did not grant Petitioner's motion for

judgment of acquittal; (3) failed to strike the testimony of the victim's former boyfriend based on a violation of the rule of sequestration; (4) admitted the hearsay testimony of Officer Gruber; and (5) allowed Officer Gederain to give his interpretation of Petitioner's statement (Doc. #1 at 5-12).   Petitioner raised each of these issues in his brief on direct appeal (Ex. 2), but the claims were rejected by Florida's Second District Court of Appeal (Ex. 4); *Vega v. State*, 980 So. 2d 502 (Fla. 2d DCA 2008).[4]

Respondents argue that these claims are unexhausted and procedurally barred from review in this Court because Petitioner did not present the federal nature of the claims to the trial court or to the state appellate court on direct appeal.   Respondent further argues that these claims are not cognizable on federal habeas review because they raise only issues of state law (Doc. #42 at 12-34). Petitioner does not dispute Respondents' assertions in his reply (Doc. #83).   This Court agrees that Petitioner did not fairly present the federal aspects of these claims to the Florida courts.   Therefore, they are unexhausted, and as a result, this Court may not review them absent a showing of cause and prejudice, or a fundamental miscarriage of justice.

In Point I of his brief on direct appeal, Petitioner argued that the trial court erred under Florida evidentiary law when it allowed the victim to testify that she "was scared, felt disgusting, and would not let anyone touch her for the longest time." (Ex. 2 at 8). Petitioner asserted that the victim's testimony was simply irrelevant to whether [he] was guilty" and cited Florida cases in support of this assertion. *Id.*   In Point II, Petitioner argued that, under Florida law, it was error for the court to reserve ruling on Petitioner's

---

[4] Petitioner has not elaborated on any of his claims in the instant petition for writ of habeas corpus.   Accordingly, in order to determine the facts and legal bases upon which Petitioner relies, the Court refers to Petitioner's appellate brief filed in support of these issues on direct appeal (Ex. 2).

motion for judgment of acquittal. *Id.* at 9-10.   Petitioner also argued that his conviction was built on a stacking of inferences which was improper under Florida law. *Id.*   In Point III, Petitioner argued that the state court failed, under Florida law, to conduct an adequate inquiry into the violation of the rule of sequestration. *Id.* at 11-13.   In Point IV, he argued that the trial court erred, under Florida evidentiary law, by admitting the hearsay testimony of Officer Steven Gruber. *Id.* at 14.   Finally, in Point V of the brief, Petitioner asserted that the trial court erred, under Florida evidentiary law, by allowing Detective Gederain to give his interpretation of Appellant's statement. *Id.* at 15.

Nowhere in Petitioner's appellate brief did he reference any constitutional provision or federal law, and his substantive arguments addressed only Florida law and Florida cases.   No state case offered in support of Petitioner's claims cited to federal case law or employed any federal constitutional analyses.   Accordingly, the state court was not on notice of any federal claim. *See Zeigler v. Crosby*, 345 F.3d 1300, 1307 (11th Cir. 2003) (holding that federal habeas petitioner failed to "fairly present" his juror misconduct claims to the state courts where his brief to the state appellate court did not refer to the federal constitutional issues raised in his federal habeas petition, and none of the cases cited in his direct appeal discussed the federal Constitution); *Upshaw v. Singletary*, 70 F.3d 576, 578 (11th Cir. 1995) ("[T]he applicant must have fairly apprised the highest court of his state with the appropriate jurisdiction of the federal rights which allegedly were violated."). Indeed, other than Petitioner's conclusory statements in the instant petition that "the state court acted contrary to clearly established federal law" and he was, therefore, denied a fair trial, Petitioner does not apprise this Court of the clearly established federal laws or constitutional provisions he believes were violated during his trial (Doc. #1 at 5, 12).   To the extent Petitioner asserts that the appellate court erred under Florida law in denying

these claims, such an argument is not cognizable on federal habeas review. The violation of state law or state rules of procedure does not provide a basis for federal habeas relief. *Barclay v. Florida*, 463 U.S. 939, 958–59 (1983) ("Mere errors of state law are not the concern of this court ... unless they rise for some other reason to the level of a denial of rights protected by the United States Constitution.") (citations omitted); *Tejada v. Dugger*, 941 F.2d 1551, 1560 (11th Cir. 1991) ("Questions of state law [and procedure] rarely raise issues of federal constitutional significance, because '[a] state's interpretation of its own laws provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved.'") (*quoting Carrizales v. Wainwright*, 699 F.2d 1053 (11th Cir. 1983)).

Therefore, Claims One through Five of the instant petition are unexhausted.   It would be futile to dismiss this case to give Petitioner the opportunity to exhaust these claims because they could have been raised on direct appeal. *See Parker v. Dugger*, 876 F.2d 1470 (11th Cir. 1989) (where dismissal to allow exhaustion of unexhausted claims would be futile due to state procedural bar, claims are considered procedurally barred in federal court).   Florida's state procedural rules precluding a second direct appeal, and the time limitations for bringing an appeal bar Petitioner from returning to state court to present the claims. *See* Fla. R. App. P. 9.110(b).   Because Petitioner failed to exhaust his state court remedies, he is procedurally barred from raising Claims One through Five in his federal habeas petition.   Petitioner has neither alleged nor shown cause excusing the default or actual prejudice resulting from the procedural bar.   Further Petitioner has not alleged or shown that he is entitled to the fundamental miscarriage of justice exception.   Accordingly, Claims One through Five are dismissed as unexhausted and procedurally barred. 28 U.S.C. § 2254(b)(1)(A).

### b. Claim Six

Petitioner asserts that trial counsel failed to adequately investigate and prepare for trial (Doc. #1 at 12).   Specifically, Petitioner claims that counsel did not file a motion to suppress or other pretrial motions claiming that the show-up identification by the victim was unreliable. *Id.*   Petitioner raised this issue in his Rule 3.850 motion, and, applying the *Strickland* standard, the post-conviction court concluded that Petitioner's allegations regarding counsel's failure to adequately investigate were conclusively refuted by the record:

> Defense counsel moved to suppress any reference to the statement Defendant gave to Detective Gederian.   However, the objection was overruled.   Defense counsel also objected to the chain of custody of DNA evidence collected from the victim and Defendant.   The record also shows that counsel filed a notice of expiration of speedy trial time, a motion for mistrial, a motion for judgment of acquittal, a motion to suppress Defendant's letters, a motion to invoke the rule. Accordingly, the other issues [other than the motion to suppress the suggestive identification] will be denied in the final order because they are conclusively refuted by the record.

(Ex. 14 at 2) (internal citations to the record omitted).   However, although the post-conviction court concluded that counsel had adequately investigated Petitioner's case, because counsel had not moved to suppress the victim's and her boyfriend's show-up identification, the post-conviction court ordered a hearing on that particular issue. *Id.*

After an evidentiary hearing, the post-conviction court denied relief on Petitioner's claim that defense counsel should have moved to suppress the show-up identification because "[t]estimony showed that counsel considered filing a motion to suppress, but chose not to file the motion based upon the law and the fact that he believed that he did not have a good faith basis to file the motion, nor did he believe that the motion would have been granted." (Ex. 15 at 3).   The post-conviction court also found that Defendant's

testimony on this issue was not credible. *Id.* Petitioner has not explained how the post-conviction court's conclusions were based upon an unreasonable determination of the facts or were contrary to, or an unreasonable application of, *Strickland*.

The Supreme Court has stated that "[s]uggestive confrontations are disapproved because they increase the likelihood of misidentification, and unnecessarily suggestive ones are condemned for the further reason that the increased chance of misidentification is gratuitous." *Neil v. Biggers*, 409 U.S. 188, 198 (1972). However, show-up identifications <u>are</u> permitted if, based on the totality of circumstances, the identification was reliable. *Id.* at 199. "[T]he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Id.* at 199–200. "The state court's findings on each of the *Biggers* factors are entitled to a presumption of correctness . . ." *Hawkins v. Sec., Fla. Dep't of Corr.*, 219 F. App'x 904, 907 (11th Cir. 2007).

In the instant case, the victim testified at trial that, during the attack, she was face to face with her attacker (T. at 116, 117, 122, 131). She also testified that she got a good look at Petitioner's van as he drove past her and when she saw it later that evening (T. at 118). She testified that "five or ten minutes" after her attack she saw Petitioner's van after it had been stopped by the police, and Petitioner was standing behind it (T. at 122). Witness Dennis Trepeta ("Trepeta"), the victim's boyfriend, testified that the attacker's van drove "right past" him and he got a clear look at the driver's skin color and age as well as a good description of the van (T. at 145). He testified that the police took him to

where they had pulled over a van and Trepeta recognized it as the "exact same van that [he] saw two feet from [him] down in the alley." (T. at 148, 149).   Trepeta also testified that he recognized the driver's shirt, facial structure, and features but did not "get a clear, precise exact recognizable face[.]" (T. at 149).   Trepeta testified that Petitioner looked like the driver of the attacker's van (T. at 151).   Petitioner was placed under arrest as a result of the victim's and Trepeta's identifications soon after the attack (T. at 200).

At the evidentiary hearing on this issue, defense counsel testified that he had researched the law; did not believe that the identification was unduly suggestive; believed that the victim's identification of Petitioner was certain; and had no indication that the police had suggested to the victim or Trepeta that Petitioner was the attacker (Ex. 16 at 794-810).   He testified that he did not believe he had a good faith basis to file a motion to suppress the identification, and had he filed a motion to suppress the identification, he believed it would have been denied. *Id.* at 814. 828.   Counsel also noted that it was not until after the victim failed to identify Petitioner at trial that "the identification issue became a big deal." *Id.* at 827.   Given the victim's proximity to her attacker, the length of the attack, the witnesses' ample opportunity to observe Petitioner's van, the victim's certainty of Petitioner as her attacker at the show-up identification and the short time between the attack and Petitioner's stop by the police, it was not unreasonable for defense counsel to conclude that the victim's and Trepeta's show-up identifications of Petitioner were reliable and that filing a motion to suppress the identifications would have been futile.[5]   *Biggers,*

---

[5] At the evidentiary hearing, Petitioner testified that he was detained four to four and a half hours before the victim and Trepeta were brought to identify him instead of the fifteen to twenty minutes as alleged by the witnesses at trial.   Petitioner also testified that the victim actually never identified him, but identified only a photograph of his driver's license (Ex. 15 at 2; Ex. 16 at 823-25).   However, the post-conviction court specifically determined that it did not find Petitioner's testimony credible (Ex. 15 at 2-3).

409 U.S. at 199.

Petitioner has not demonstrated that the post-conviction court's rejection of this claim was contrary to *Strickland* or based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.   It was not unreasonable for the post-conviction court to conclude that counsel acted reasonably, and this claim fails on the first prong of *Strickland*.   See *Knowles v. Mirzayance*, 556 U.S. 111, 127 (2009) (the law does not require counsel to raise every available non-frivolous defense); *Card v. Dugger*, 911 F.2d 1494, 1520 (11th Cir. 1990) (counsel is not required to raise meritless issues).   Claim Six is denied pursuant to 28 U.S.C. § 2254(d).

### c. Claim Seven

Petitioner asserts that trial counsel was ineffective for failing to object to the lack of required oaths on "the documents filed." (Doc. #1 at 13).   Petitioner raised this issue in his Rule 3.850 motion, arguing that the lack of an oath deprived the trial court of jurisdiction (Ex. 12 at 11-12).   The post-conviction court rejected the claim as "without merit," noting that "[e]ven if Defendant's allegation is true, it did not deprive the trial court of jurisdiction." (Ex. 14 at 2).   The limited inquiry under the AEDPA is whether the state

---

Determinations of credibility are best made by the trial court judge who can assess the demeanor and candor of the witnesses. *Gore v. Sec'y for Dep't of Corr.*, 492 F.3d 1273, 1300 (11th Cir.2007) (noting that while reviewing court also gives a certain amount of deference to credibility determinations, that deference is heightened on habeas review) (citing *Rice v. Collins*, 546 U.S. 333 341–42 (2006) (stating that "[r]easonable minds reviewing the record might disagree about the [witness'] credibility, but on habeas review that does not suffice to supersede the trial court's credibility determination")); *see also Marshall v. Lonberger*, 459 U.S. 422, 434 (1983) ("[Title] 28 U.S.C. § 2254(d) gives federal habeas [corpus] courts no license to re-determine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them."); *Smith v. Kemp*, 715 F.2d 1459, 1465 (11th Cir.1983) ("Resolution of conflicts in evidence and credibility issues rests within the province of the state habeas court, provided petitioner has been afforded the opportunity to a full and fair hearing.").

court's decision to reject Petitioner's claim was contrary to, or involved an unreasonable application of, *Strickland* or was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d). Petitioner has not made this threshold showing.

Petitioner does not explain his assertion that "[t]he State Court acted contrary to clearly established federal law on this ground." (Doc. #1 at 13).   Likewise, Petitioner does not point the Court to any document with a defective oath.   Even if Petitioner's current claim could be interpreted as an assertion that the state court erred when it concluded that there could be no prejudice because the court was not deprived of jurisdiction by the lack of a proper oath, in order to grant habeas relief, this Court would have to first conclude that the post-conviction court and the Second District Court of Appeal misinterpreted Florida law.   In *Herring v. Secretary, Dept. of Corr.*, 397 F.3d 1338 (11th Cir. 2005) and *Callahan v. Campbell*, 427 F.3d 897 (11th Cir. 2005), the Eleventh Circuit addressed similar issues.   In those cases, the petitioners claimed that their trial attorneys were ineffective, based on state law, for failing to object to certain evidence at trial. *Herring*, 397 F.3d at 1354-55; *Callahan*, 427 F.3d 897, 932.   On direct appeal, the state courts rejected the petitioners' claims based on state law. *Herring*, 397 F.3d at 1354-55; *Callahan*, 427 F.3d 897, 932.   Both petitioners brought ineffective assistance of counsel claims in their federal habeas petitions, and the Eleventh Circuit rejected the claims because granting the petitions would have required the Eleventh Circuit to conclude that the state appellate courts misinterpreted state law. *Herring*, 397 F.3d at 1354-55 ("The Florida Supreme Court already has told us how the issues would have been resolved under Florida state law had [petitioner's counsel] done what [petitioner] argues he should have done. . . . It is a 'fundamental principle that state courts are the final arbiters of state

law, and federal habeas courts should not second-guess them on such matters.'"); *Callahan*, 427 F.3d 897, 932 ("[T]he Alabama Court of Criminal Appeals has already answered the question of what would have happened had [petitioner's counsel] objected to the introduction of [petitioner's] statements based on [state law]-the objection would have been overruled. . . . Therefore, [petitioner's counsel] was not ineffective for failing to make that objection.").

Here, as in *Herring* and *Callahan*, the post-conviction court and Florida's Second District Court of Appeal have answered the question of what would have happened had Petitioner's counsel objected to the lack of a proper oath on certain documents. The post-conviction court specifically determined that, even if Petitioner's allegations were true, the lack of a proper oath would not have deprived the court of jurisdiction, and this determination was upheld on appeal. Therefore, Petitioner cannot demonstrate prejudice from counsel's failure to object to the allegedly defective oath. The state court's ruling did not result in an unreasonable application of federal law, and Petitioner is not entitled to federal habeas relief on Claim One. 28 U.S.C. § 2254(d).

### d.  **Claim Eight**

Petitioner asserts that trial counsel was ineffective for failing to impeach the prosecution's witnesses, or call into question the chain of custody of DNA evidence. Specifically, Petitioner claims that "[t]here is nothing in the record that shows any impeachment of witnesses[,]" and that "[t]he state lower courts acted contrary to clearly established federal law on this ground." (Doc. #1 at 13). In his Rule 3.850 motion, Petitioner raised a claim that trial counsel was ineffective for failing to impeach the victim and Trepeta due to their admitted intoxication at the time of the attack and inconsistencies in their identification testimony (Ex. 12 at 11-14). This Court will review Claim Eight to

the extent it was exhausted in Petitioner's Rule 3.850 motion. [6]

The post-conviction court denied Petitioner's claim that counsel had not effectively cross examined the victim and Trepeta, noting that the allegation was "conclusively refuted by the record" and that "Defense counsel intensely cross-examined and tried to impeach every one of the State's key witnesses[.]" (Ex. 14 at 5). A review of the record supports the state court's conclusion. In his cross examination of the victim, counsel asked questions about her use of false identification to purchase alcohol, the number of alcoholic drinks she had consumed prior to the attack, whether she had used drugs, the propriety of her relationship with Trepeta, the extent of any injury she may have incurred as a result of the attack, and her inability to positively identify Petitioner at trial (T. at 128-34). Counsel also impeached the victim's testimony that Petitioner had kissed her during the attack with a statement the victim had made to medical personnel during her examination on the night of the attack (T. at 130-31). Counsel cross examined Trepeta regarding the amount of alcohol he had consumed the evening of the attack, questioned him as to whether he had used drugs that evening, and asked if he had been evicted from his apartment (T. at 152-57). Counsel also led Trepeta to admit that he did not get "the clearest look" at the attacker and attempted to cast doubt on Trepeta's view of the attacker immediately after the attack (T. at 158-59).

Given the contrary evidence in the record, Petitioner has failed to demonstrate that the post-conviction court's conclusion that counsel had adequately cross examined the victim and Trepeta was based upon an unreasonable determination of the facts or

---

[6] Petitioner did not raise an argument regarding the chain of custody of the DNA evidence in his Rule 3.850 motion, and has not alleged any cause for his failure to do so. Therefore, this Court cannot consider Petitioner's unexhausted claim regarding the chain of custody of DNA evidence. *See* discussion *supra*, Part III(a); 28 U.S.C. § 2254(b)(1)(A).

contrary to *Strickland*.   Claim Eight is denied pursuant to 28 U.S.C. § 2254(d).

### e. *Claim Nine*

Petitioner asserts that trial counsel was ineffective for failing to oppose the use of cumulative hearsay evidence during trial (Doc. #1 at 14).   Petitioner asserts that this issue involves the testimony of Officer Steven Gruber, Portia Reid, Dennis Trepeta, Brant Gederian, Dr. Aleas, and Carol Greenwell. *Id.*   However, Petitioner does not identify the alleged hearsay testimony to which he now objects.   In his Rule 3.850 motion, Petitioner pointed to portions of testimony from Officer Steven Gruber, Dennis Trepeta, and Officer Gederain that he found objectionable (Ex. 12 at 16).   Petitioner asserted that Officer Gruber was allowed to testify that the victim and Trepeta made an out-of-court identification; that "Trepeta made an identification of Defendant through hearsay from the victim"; and that Officer Gederain was allowed to give a summary of Petitioner's statement. *Id.* at 16-17.   This Court will review Claim Nine to the extent it was exhausted in Petitioner's Rule 3.850 motion.[7]

When raised in Petitioner's Rule 3.850 motion, the post-conviction court denied this claim, stating in pertinent part:

> Defendant alleges that trial counsel was ineffective for failing to properly object, and to oppose, the use of cumulative hearsay evidence by the prosecution.   This issue involves the testimony of Officer Steven Gruber, who testified that another officer told him that the victim and her boyfriend identified Defendant as the person driving the van and that they both made an out-of-court identification of Defendant.   This allegation is without merit.   A review of Officer Gruber's

---

[7] Petitioner did not assert in his Rule 3.850 motion that Dr. Aleas or Carol Greenwell were allowed to provide impermissible hearsay testimony.   Any claim that they did so is raised for the first time in the instant petition and is therefore, unexhausted and cannot be reviewed by this Court. *See* discussion *supra*, Part III(a); 28 U.S.C. § 2254(b)(1)(A).

> testimony does not show that "cumulative hearsay evidence"
> was submitted.

(Ex. 14 at 3) (internal citations to the record omitted).   A review of the record supports the post-conviction court's conclusion that no "unobjected-to" hearsay evidence was offered at trial.   To the contrary, when Officer Gruber was asked whether the victim and Trepeta had positively identified Petitioner as the attacker, defense counsel objected (T. at 224).   Likewise, when Officer Gederain was asked to testify regarding a transcript of his interview with Petitioner in which Petitioner had made several contradictory statements, counsel objected and moved to prevent the officer from testifying as to the transcript's contents (T. at 181, 184).   Finally, defense counsel moved to strike Dennis Trepeta as a witness based on a violation of the law of sequestration because Trepeta had spoken briefly with the victim after her testimony (T. at 138).

Because counsel objected to each of the instances of alleged "hearsay" evidence raised in Petitioner's Rule 3.850 motion, he was not ineffective for failing to do so. Petitioner has not shown that the post-conviction court's adjudication of this claim was contrary to *Strickland* or based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.   Accordingly, Claim Nine is denied pursuant to 28 U.S.C. § 2254(d).

### f. Claim Ten

Petitioner argues that trial counsel was ineffective for failing to object to the state shifting the burden of proof (Doc. #1 at 14-15).   Specifically, Petitioner asserts that counsel should have objected to the prosecutor's statement in closing in which he argued, "when you add everything up and you use your common sense, as everybody in this room is asking you to do, you're going to convict Walter Vega of sexual battery[.]" *Id.* at 14. Petitioner raised this claim in his Rule 3.850 motion, and the post-conviction court denied

it because there was no reason for counsel to object to this statement and because the statement did not shift the burden of proof as alleged by Petitioner (Ex. 14).

Petitioner does not indicate how the state court's adjudication of this claim was based upon an unreasonable determination of the facts or contrary to *Strickland*.   To the contrary, a review of Florida law supports the post-conviction court's conclusions.   Under Florida law, both the prosecutor and the defendant are afforded wide latitude in closing arguments. *See Moore v. State*, 701 So. 2d 545 (Fla. 1997) ("Wide latitude is permitted in arguing to a jury.").   Closing argument is an opportunity for counsel to review the evidence and to argue which inferences may be drawn from the evidence. *Merck v. State,* 975 So. 2d 1054 (Fla. 2007).   In the instant case, the prosecutor's statement was made after he had reviewed the evidence presented at trial (T. at 321-31).   By suggesting that the evidence supported a guilty verdict, the prosecutor presented a conclusion that he believed the jury should draw from the evidence. *See Covington v. State*, 334 So. 2d 658, 659 (Fla. Ap.. 1976) (no error when prosecutor argued that "common sense tells you it is not common sense if you go out into the community and say he is not guilty when he is[.]"); *Valentine v. State*, 98 So.3d 44 (Fla. 2012) ("Indicating to the jury that, based on the evidence of the case, they should question the plausibility of the defense's theory of the case is within a prosecutor's role of assisting the jury to consider and to evaluate the evidence presented"); *Craig v. State*, 510 So. 2d 857, 865 (Fla. 1987) (recognizing that it is not improper for the prosecutor to submit to the jury a conclusion that he is arguing can be drawn from the evidence).   Any objection to the prosecutor's comments during closing argument would have been meritless, and trial counsel cannot be deemed ineffective for failing to make a meritless objection.   Accordingly, Petitioner has not satisfied the first prong of the *Strickland* test.

Moreover, Petitioner cannot show that he suffered prejudice from the prosecutor's argument.   The trial court instructed the jury that closing arguments should not be considered evidence in the case or as an instruction on the law (T. at 303-04). Thereafter, the trial court instructed the jury on the appropriate law (T. at 339-49). Petitioner has offered no evidence that the jury disregarded the court's instructions. *See Adams v. Wainwright*, 709 F.2d 1443, 1447 (11th Cir. 1983) (a jury is presumed to follow jury instructions).   Accordingly, Claim Ten also fails on the prejudice prong of the *Strickland* test and is denied pursuant to 28 U.S.C. § 2254(d).

### g.  Petitioner's Amended Brief

Petitioner filed an "Amended Brief" on December 6, 2011 in which he attempted to raise five additional claims of trial court error (Doc. #21).   As noted in Respondents' response, Petitioner did not seek, and was not granted, leave to file an amended petition (Doc. #17).   Consequently, the Court does not construe the Amended Brief to be an amended petition.   Nonetheless, even had Petitioner filed a proper amended petition, the additional claims in the Amended Brief do not entitle him to habeas relief because they are either unexhausted and procedurally barred or completely refuted by the record.[8]

In his Amended Brief, Petitioner claims that his due process rights were violated

---

[8] Petitioner moved to supplement the record two months after his initial petition was filed (Doc. #6).   The motion was granted to the extent that the supplement provided "additional facts and documents in support of the claims raised in the petition." (Doc. #9). However, Petitioner filed a pleading in which he did not attempt to provide facts or documents in support of Claims One through Ten, but instead raised new claims for relief. Because this Court is mindful of its responsibility to address and resolve all claims raised in a petition, and because Respondents had an opportunity to review and respond to these claims, the Court will address the claims raised in Petitioner's Amended Brief, notwithstanding his failure to comply with the Court's instructions.   *See Clisby v. Jones*, 960 F.2d 925, 936 (11th Cir. 1992) (instructing the district courts to resolve all claims for relief raised in a petition for writ of habeas corpus).

because: (1) he was denied an interpreter at trial; (2) he was not timely brought to trial under Florida's speedy trial law; (3) the prosecutor did not execute a proper oath of office; (4) the state's DNA expert testified that there was not a 100% match of the victim's DNA to the DNA on Petitioner's hand;[9] and (5) a review of the testimony of the victim and her boyfriend show that they lied at trial (Doc. #21 at 2-5).

On July 31, 2008, Petitioner filed with the post-conviction court an "Amended Motion to Supplement the Pending Motion for Post-Conviction Relief, Rule 3.850 Motion" in which he argued, *inter alia*, that the trial judge refused him an interpreter at trial, that certain oaths were improper, that the victim's and Trepeta's testimony must have been predicated upon perjury because certain statements at trial were inconsistent with statements made to the police immediately after the attack, and that his trial was "rotten." (Ex. 16 at 438-41). The post-conviction court denied the claims raised in the supplemental Rule 3.850 motion as either "bogus" or as improperly filed in a Rule 3.850 motion because claims of trial court error should have been raised on direct appeal (Ex. 14 at 4). In other words, the post-conviction court denied each of the claims raised in Petitioner's Amended Brief (Doc. #21), except for the alleged speedy-trial violation, as procedurally barred, and the Second District Court of Appeal affirmed the decision without

---

[9] The testimony at trial was clear that, because there was more than one person's DNA on Petitioner's hand, the odds that the DNA belonged to the victim were lower than the odds had there been only one person's DNA on Petitioner's hand – specifically, 1 in 250,000 instead of the "quadrillions" that could occur with a better DNA sample (T. at 282 – 90). Petitioner does not elaborate on this claim or explain how the DNA expert's testimony resulted in a constitutional due process violation. Moreover, this claim of trial court error was not properly raised in Petitioner's state court proceedings. Petitioner has not alleged cause for, or resulting prejudice from, the procedural bar. Accordingly, in addition to lacking merit, the claim is unexhausted and will not be further addressed by this Court. *See* discussion *supra*, Part III(a); 28 U.S.C. § 2254(b)(1)(A).

discussion.

The procedural bar of a Rule 3.850 claim that should have been, but was not, raised on direct appeal is an adequate ground for the state court's denial of relief because it is firmly established and regularly followed in cases such as Petitioner's. *See LeCroy v. Sec'y, Fla. Dep't of Corr.*, 421 F.3d 1237, 1260 (11th Cir. 2005) ("As this Court has concluded, if . . . the claim could have been raised [on direct appeal], but was not, it would be barred from any state collateral review, and likewise barred from federal review.") (internal quotations marks omitted); *Bell v. State*, 965 So.2d 48, 60 (Fla. 2007) (finding claim procedurally barred as a post-conviction claim because it could have been raised on direct appeal); *Teffeteller v. Dugger*, 734 So.2d 1009, 1016 (Fla. 1999) (substantive claims raised by post-conviction relief movant were procedurally barred because they could have been raised on direct appeal); *Smith v. State*, 445 So.2d 323, 325 (Fla. 1983) ("[i]ssues which either were or could have been litigated at trial and upon direct appeal are not cognizable through collateral attack"). Accordingly, based on the foregoing, this Court defers to the post-conviction court's conclusions and considers the claims of trial court error raised in Petitioner's Amended Brief to be procedurally defaulted. Petitioner has made none of the requisite showings to excuse the default, which bars federal habeas review of these claims. *Coleman*, 501 U.S. at 734–35 and n. 1; *Bailey*, 172 F.3d at 1302–03; *Judd*, 250 F.3d at 1313.

Petitioner raised his "speedy trial" claim in a March 16, 2009 "supplement" to his Rule 3.850 motion (Ex. 16 at 490). Instead of dismissing the claim as procedurally barred, the post-conviction court interpreted it as one of ineffective assistance of counsel and noted that the allegation was conclusively refuted by the record because counsel had filed a notice of expiration of speedy trial time (Ex. 14 at 5). Indeed, the records show

that counsel filed the notice on June 9, 2006 (Ex. 16 at 500).  Therefore, to the extent the instant claim was predicated upon ineffective assistance of counsel, Petitioner has not shown entitlement to relief.

To the extent Petitioner argues that the state failed to comply with Florida's speedy trial provisions, even assuming that the claim is exhausted, federal habeas corpus relief is available only for the vindication of rights existing under federal constitutional law, not rights existing solely under state rules of procedure. *Estelle v. McGuire*, 502 U.S. 62, 67-68, (1991) (holding that errors that do not infringe upon a defendant's constitutional rights provide no basis for federal habeas corpus relief); *Barclay v. Florida*, 463 U.S. 939, 958-659 (1983) ("[M]ere errors of state law are not the concern of this court . . . unless they rise for some other reason to the level of a denial of rights protected by the United States Constitution.") (internal citations omitted).  Accordingly, to the extent Petitioner bases his claim on the State's failure to try him within the time allowed under Florida law, the claim is not cognizable on federal habeas review.

Next, even if the trial court erred under Florida law, Petitioner's right to a speedy trial as provided in Florida Rule of Criminal Procedure 3.191 is not coextensive with the broader constitutional right to a speedy trial.  *See State v. Naveira*, 873 So. 2d 300, 308 (Fla. 2004); *State v. Bivona*, 496 So. 2d 130, 133 (Fla. 1986) ("Florida's speedy trial rule is a procedural protection and, except for the right to due process under the rule, does not reach constitutional dimension.").  Accordingly, even assuming, *arguendo*, that the state courts failed to try Petitioner within the proper time period under Florida law, such an error would not automatically result in a constitutional violation.  Rather, in order to demonstrate entitlement to federal habeas relief, Petitioner would need to show that his federal constitutional rights to a speedy trial were violated.

In *Barker v. Wingo*, the United States Supreme Court recognized four factors that must be considered in determining if the constitutional right to a speedy trial has been violated:   (1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (3) prejudice to the defendant. 407 U.S. 514, 530 (1972). Under *Barker* the length of the delay must be "presumptively prejudicial" in order to trigger an inquiry into the other three factors. *United States v. Dunn*, 345 F.3d 1285, 1296 (11th Cir. 2003); *United States v. Register*, 182 F.3d 820, 827 (11th Cir. 1999) ("The first factor serves a triggering function; unless some 'presumptively prejudicial' period of delay occurred, we need not conduct the remainder of the analysis.") (citing *Barker*, 407 U.S. at 530).

Petitioner does not dispute that he proceeded to trial on July 16, 2010, approximately eight months after his arrest (Ex. 1, Vol. II).   Although there is no precise time for implication of the constitutional right to a speedy trial, *Barker*, 407 U.S. at 521 ("[w]e cannot definitely say how long is too long in a system where justice is supposed to be swift but deliberate"), a one-year period has been recognized as the amount of time necessary to require a constitutional speedy trial analysis. *See Doggett v. United States*, 505 U.S. 647, 652 n. 1 (1992) ("[T]he lower courts have generally found post-accusation delay 'presumptively prejudicial' at least as it approaches one year. . . . [I]t simply marks the point at which courts deem the delay unreasonable enough to trigger the *Barker* enquiry.") (internal citations omitted); *United States v. Dunn*, 345 F.3d 1285, 1296 (11th Cir. 2003) ("A delay is considered presumptively prejudicial as it approaches one year."); *United States v. Derose*, 74 F.3d 1177, 1185 (11th Cir. 1996) ("[E]ight-month delay is insufficient to merit a Sixth Amendment speedy trial violation inquiry.").   Petitioner's eight

month delay does not trigger a *Barker* inquiry into a constitutional speedy trial claim. Accordingly, Petitioner is not entitled to habeas relief on his speedy-trial claim.

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

## IV.   Certificate of Appealability

Petitioner is not entitled to a certificate of appealability.   A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1).   Rather, a district court must first issue a certificate of appealability ("COA").   "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, Petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller–El*, 537 U.S. at 335–36. Petitioner has not made the requisite showing in these circumstances.

Because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis.*

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1.     Claims One through Five of Walter Vega's petition for writ of habeas corpus (Doc. #1) and the claims of trial court error raised in Petitioner's Amended Brief (Doc. #21) are **DISMISSED** as unexhausted and procedurally barred.   All remaining claims are **DENIED** pursuant to 28 U.S.C. § 2254(d);

2.   Petitioner is **DENIED** a Certificate of Appealability; and

3. The Clerk of the Court is directed to terminate all pending motions, enter judgment accordingly, and close this case.

**DONE** and **ORDERED** in Fort Myers, Florida on this 2nd day of April, 2014.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

SA: OrlP-4 4/2/14
Copies: Walter Vega
Counsel of record